IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIMAS RODRIGUEZ, and all others similarly situated under 29 U.S.C. 216 (b), | § § § | |
| Plaintiffs, | § § | |
| v. | § § | C.A. No. 3:15-cv-03370-BK |
| SHAN NAMKEEN, INC., SHAILESH PATEL, MANISHA PATEL, and SHIRISH PATEL, | § § § § § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Shan Namkeen, Inc., Shailesh Patel, Manisha Patel, and Shirish Patel (collectively, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, files this Motion to Dismiss (the "Motion") Plaintiff's Second Amended Complaint (Dkt. 39), and respectfully state as follows:

## I. NATURE OF THE ACTION

As the Court is aware, Plaintiff filed this suit in October of 2015 for alleged violations of the Fair Labor Standards Act ("FLSA").  Plaintiff initially filed suit against Shan Namkeen, Inc. ("SNI"), a manufacturer of a savory flavored snack food.  After learning through discovery that the FLSA did not apply to SNI because its annual gross volume of sales was less than $500,000, Plaintiff filed his First Amended Complaint claiming that SNI and S2 Brothers, LLC ("S2"), a coin operated laundry, were an "enterprise" that together met the requisite sales volume. On January 9, 2017, the Court

dismissed the First Amended Complaint because Plaintiff's allegations were insufficient to establish individual coverage, enterprise coverage, or that SNI and S2 were a joint enterprise ("Order," Dkt. 34).  With respect to enterprise liability, the Court highlighted:

> **Crucially, however, Plaintiff does not explain how SNI – a commercial food manufacturer – and S2 – a coin-operated laundry – are engaged in complementary businesses. *Bay*, 23 F.3d at 115-16. In fact, Plaintiff's First Amended Complaint does not even state what S2's business entails.**

Plaintiff's Second Amended Complaint fairs no better.  It not only fails to establish either individual or enterprise coverage, but only mentions in passing what S2's business entails—despite the Court's Order. For these reasons, and those below, the Second Amended Complaint should also be dismissed for failure to state a claim.

## II.  ISSUE PRESENTED

1.      Whether the Second Amended Complaint states a claim against Defendants for FLSA violations upon which relief may be granted.

## III.  ARGUMENT AND AUTHORITIES

### A.    Standards for Ruling on a Motion to Dismiss.

Under FED. R. CIV. P. 12(b)(6), the Court may dismiss a pleading for "failure to state a claim upon which relief may be granted."  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Miller v. Wachovia Bank, N.A.,* 541 F. Supp. 2d 858, 861 (N.D. Tex. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Navo S. Dev. Partners, Ltd. v. Denton County Elec. Co-op., Inc*., 669 F. Supp. 2d 747, 755 (E.D. Tex.

2009) (noting that boiler plate and conclusory assertions are not sufficient).   Naked assertions will not suffice, and conclusory statements unsupported by factual content are not accepted as true. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 664.  Rather, a claim must contain sufficient factual matter that, if accepted as true, "nudge[s] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S at 570.

A claim has facial plausibility only when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). It must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  In that vein, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The factual allegations must be enough to "raise a right to relief above the speculative level, on the assumption that all allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  But, when the allegations do not raise a claim for relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the Court. *Id.* at 558.  Application of these standards confirms that the Second Amended Complaint should be dismissed.

**B.**    **Plaintiff's FLSA Claim Fails.**

"The FLSA guarantees overtime pay to employees 'engaged in the production of goods for commerce' ('individual coverage') or 'employed in an enterprise engaged in commerce or in the production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir.1992) (emphasis in original) (*citing* 29 U.S.C. §

207(a)(1)). "Either individual or enterprise coverage is enough to invoke FLSA protection." *Id.* (emphasis in original).  Because coverage is an element of an FLSA claim, Plaintiff must allege facts that show coverage to survive a motion to dismiss. *Morrow v. JW Elec., Inc.*, No. 3:11–CV–1988–D, 2011 WL 5599051, at *2 (N.D. Tex. Nov. 16, 2011) (*citing Lindgren v. Spears*, No. H–10–1929, 2010 WL 5437270, at *3 (S.D. Tex. Dec.27, 2010)).  Here, Plaintiff's allegations again miss the mark.

     1.    <u>Individual Coverage</u>.

     As an initial matter, Plaintiff has failed to alleged facts to show individual coverage.  Individual coverage is not defined in the FLSA, but the Supreme Court has described the test for individual coverage as whether "the employee's activities ... are actually in or so closely related to the movement of the commerce as to be a part of it." *Mendoza v. Detail Solutions, LLC*, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012) (alteration in original) (*citing McLeod v. Threlkeld*, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943)). The Fifth Circuit has applied a "practical test," which considers whether the employee's job "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mendoza*, 911 F. Supp. 2d at 439 (*citing Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (citation omitted)).

     Here, Plaintiff generally describes his duties as "a delivery driver and laborer." [Sec. Am. Complaint, ¶ 11.] This paragraph is followed by a conclusory paragraph that simply contains a formulaic recitation of the elements, which the Court previously held was insufficient. [Sec. Am. Complaint, ¶ 12; Order, p. 6.] Plaintiff's new allegations

regarding interstate commerce are that: (1) he locally transported snack foods to other locations for packaging in Texas; (2) he believes the bags used to package the snack foods came from India; (3) he believes the ingredients for the snack foods originated outside of Texas; (4) he believes the machines used to manufacture the snack foods originated from outside of Texas; and (5) he believes the snack foods were sold outside of Texas. [Sec. Am. Complaint, ¶¶ 13-14.]  These allegations similarly miss the mark.

In sum, none of these activities reflect that Plaintiff's actual work as a local delivery driver was "intertwined with the continuous stream of interstate commerce," and it is not sufficient that he "used products that had traveled in interstate commerce." *Sontay v. Hin's Garden*, No. H:13-CV-3721, 2014 WL 6722507, at *4 (S.D. Tex. Nov. 26, 2014). As such, the purchase of the bags, the ingredients, and the machinery for the manufacturing of the snack foods, even if true, are simply not enough.  Working on goods that have previously moved through interstate commerce is not considered "part of the functioning of an instrumentality or facility of interstate commerce" and even purchasing products that have been manufactured out of state is insufficient to satisfy individual coverage. *Stanley v. Sawh*, No. CV H-13-3284, 2016 WL 561177, at *4 (S.D. Tex. Feb. 12, 2016).

Moreover, while Plaintiff "believes" that products he manufactured were being distributed in "in states surrounding Texas as well as Illinois and North Carolina," and suggests that same will "established by further investigation." However, he does not allege what specific states the products he was manufacturing went to while he was employed by SNI, where the products he manufactured specifically went, or how

"regular" the products he worked on were being sold out of state, as opposed to being isolated incidents which are insufficient to establish interstate commerce. As such, Plaintiff has also failed to allege his "regular" participation in activities indicative of interstate commerce, like interstate phone calls, transactions, or mail. *Barr v. Custom Design & Installation, Inc.,* No. 3:13-CV-04925-M, 2015 WL 1255870, at *5 (N.D. Tex. Mar. 19, 2015). Because Plaintiff has again failed to establish that his work was so directly and vitally related to the functioning or an instrumentality or facility of interstate commerce as to be part of it, rather than an isolated activity, his individual coverage allegations again fail.

       2.    **<u>Enterprise Coverage</u>.**

       a.    *Plaintiff's Conclusory Allegations are Insufficient.*

The same result is appropriate for Plaintiff's enterprise coverage allegations for at least two reasons. First, the "engaged in commerce" clause can be analyzed essentially in the same manner as individual coverage is analyzed, the difference being in individual coverage, the question is whether the plaintiff himself engaged in interstate commerce, whereas in enterprise coverage analysis, the question is whether any two or more of the business's employees engaged in interstate commerce. *See Brennan v. Greene's Propane Gas Serv., Inc*., 479 F.2d 1027 (5th Cir.1973); *Mendoza*, 911 F.Supp.2d 433, 439 (N.D. Tex. 2012). Like Plaintiff's individual coverage allegations, the majority of his enterprise coverage allegations are nothing more than bare bone recitations of the elements of such a claim, which were previously rejected. The Second Amended Complaint states that:

> Defendants employed two or more employees engaged in the production of goods for commerce, handling goods or materials that travelled through interstate commerce, or using instrumentalities of interstate commerce curing the period of Plaintiff's employment with Defendants.

[Sec. Am. Complaint, ¶ 17; Order, p. 7.]   Moreover, the remaining allegations simply incorporate by reference Plaintiff's previous allegations regarding individual coverage, which provide no additional factual support for the position that the alleged enterprise regularly participated in interstate commerce.   Therefore, for the same reasons outlined above, Plaintiff has failed to plead sufficient facts for enterprise coverage.

### b.     *Plaintiff has Failed to Allege a Common Enterprise.*

Second, and most importantly, Plaintiff has not sufficiently alleged that SNI and S2 were involved in a "common enterprise" to constitute one collective employer for the purposes of the FLSA. While an "enterprise" may consist of multiple entities, the entities must (1) perform related activities; (2) be under unified operation or common control; and (3) share a common business purpose. *Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir. 1977) (citation omitted); *see also* 29 U.S.C. § 203(r). Entities have a "common business purpose" when their activities "are directed to the same business objective or to similar objectives in which the group has an interest." 29 C.F.R. § 779.213. "A common business purpose exists if 'the separate [entities] engaged in complementary businesses, and were to a significant degree operationally interdependent.'" *Reich v. Bay, Inc.*, 23 F.3d 110, 115-16 (5th Cir. 1994) (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 530 (5th Cir. 1982)). This requires establishing "[m]ore than a common goal to make a profit." *Brennan*, 482 F.2d at 1367. Importantly for purposes of this motion, the Labor

Department regulations go on to explain that if "one individual owns or controls a bank, a filling station, and a factory, the mere fact of common ownership will not make them one enterprise." 29 C.F.R. § 779.211 (2016). While Plaintiff cannot establish related activities, as discussed below, Plaintiff's Second Amended Petition again attempts to ignore the "common purpose" element necessary for finding enterprise coverage.

In his Second Amended Complaint, Plaintiff again focuses his allegations only on the alleged related activities of SNI and S2, as well as their alleged common control. Specifically, Plaintiff alleges that SNI "shares employees with and uses the facilities" of S2 to prepare and package goods for shipment and sale. [Sec. Am. Complaint, ¶¶ 18-19.] That until 2011 (and before Plaintiff worked at SNI) the "snack food manufacturing" took place at the same address as S2, before Plaintiff admits SNI moved its operations to its Garland location. [Sec. Am. Complaint, ¶ 18.] That Defendants' relationship allowed SNI "to utilize the existing resources of [S2] to make better use of real estate and employee time that was otherwise being wasted and provided [S2] with additional employees ostensibly working for [SNI] that could transition to assist with the laundromat in the event that additional assistance was necessary." [Sec. Am. Complaint, ¶ 19.] Plaintiff also alleges that Defendants had common ownership and control. [Id.]

### c.    *SNI and S2 are not Complementary Businesses.*

While many of Plaintiff's allegations are simply untrue,[1] they fail to establish that the separate companies engaged in related activities, for complementary businesses, and

---

[1] As the Secretary of State filings make clear, SNI and S2 did not "share" a space as suggested by Plaintiff, these businesses each had separate suites at the same address (SNI, Suite 180, S2, and Suite 170). *See* Exhibits 1-2. Moreover, as evidenced by attached building diagram, these facilities were also not "connected." *See* Exhibit 3.

that were to a significant degree operationally interdependent. *Bay*, 23 F.3d at 115–16 (*quoting Donovan*, 672 F.2d at 530). As an initial matter, Plaintiff only mentions in passing that S2 is a "laundromat," which is a separate and unrelated business that does not have the same business purpose as SNI, a food manufacturer. While Plaintiff goes to great lengths to detail the activities of SNI, his allegations are completely void of any description or allegations of the alleged activities of S2 which would be the "same or similar" to those at SNI. 29 C .F.R. § 779.206(a). Accordingly, even accepting the factual allegations in Plaintiff's Second Amended Complaint as true, the primary activity of SNI is food manufacturing, while the primary activity of S2 is a coin-operated laundry, which are not the same or similar for purposes of enterprise coverage.

Further, even if Plaintiff's allegations were true, simply having a mutually beneficial working relationship does not, alone, create a common business purpose under the FLSA. If this were the standard, virtually all companies that did business together would be deemed a single enterprise for purposes of the FLSA and the common business purpose requirement and Labor Department examples would be rendered meaningless. *See Garza v. Deep Down, Inc.*, No. CIV.A. H-14-3184, 2015 WL 5883408, at *5 (S.D. Tex. Oct. 8, 2015); *Griffin v. Daniel*, 768 F. Supp. 532, 537 (W.D. Va. 1991). At most, Plaintiff alleges that SNI and S2 share employees and facilities in furtherance of each of their independent business objectives of earning income for their separate businesses, which is insufficient to satisfy the common business purpose requirement. *Garza*, 2015 WL 5883408, at *5 (*citing Hicks v. Avery Drei, LLC*, 654 F.3d 739, 746 (7th Cir.2011) ("More than a common goal to make a profit, however, must be shown to satisfy the

requirement."(*quoting Brennan v. Veterans Cleaning Serv.*, Inc., 482 F.2d 1362, 1367 (5th Cir.1973))); *see also* 29 C.F.R. § 779.213 (2015) ("Where, however, the facts show that the activities are not performed as a part of such enterprise but for an entirely separate and unrelated business, they will be considered performed for a different business purpose and will not be a part of that enterprise."). As such, Plaintiff has not pled facts showing complementary businesses.

This result is supported by *Griffin*, where plaintiff filed suit against a defendant who was the common owner of a restaurant, grocery store, and trailer park under the FLSA. *Griffin*, 768 F. Supp., at 532. Despite the apparent differences in these businesses, plaintiff argued that these businesses satisfied the common business purpose prong due to minor instances of exchanged inventory and employees. *Id*. 536. The District Court rejected this argument, holding that this did not establish a common purpose or interdependence of the businesses necessary to establish an enterprise. *Id*.

### d.   *SNI and S2 are Not Interdependent.*

Finally, as the Court emphasized in its Order, even if the parties' mutual benefit could be deemed a sufficiently common business purpose, Plaintiff must offer facts from which it can be determined that S2's operations are dependent on its relationship with SNI. [Order, pp. 9-10 (*citing Bay*, 23 F.3d at 116 (finding two entities – a contractor and a subcontractor – had a common business purpose where 90 percent of the subcontractor's business consisted of supplying labor to the contractor*); Flores v. ACT Event Servs., Inc.*, 55 F.Supp.3d 928, 937 (N.D. Tex. 2014) (Fish, J.) (finding that two entities – a production company and a cleaning company – shared a common business

purpose, where the cleaning company's "sole purpose" was to provide people to work at the production company's events); *Reich v. Priba Corp.*, 890 F.Supp. 586, 589-90 (N.D. Tex. 1995) (Fish, J.) (finding that two entities shared a common business purpose, where both entities jointly promoted and managed a gentlemen's club, and "neither entity would exist without the presence of the other").] Plaintiff again failed to do so.

With respect to S2, the only benefit of its relationship with SNI alleged is that S2's relationship with SNI allows it to "make better use of real estate and employee time," and to make available additional employees working for SNI that "could transition to assist with the laundromat in the event that additional assistance was necessary." [Sec. Am. Complaint, ¶ 19.]  Plaintiff stops short of alleging any facts that would sufficiently show that S2 is dependent on SNI in any way for its business, much less that S2's business of a coin operated laundry is reliant on SNI or that it "would not exist" without SNI. Indeed, Plaintiff has not alleged or suggested that any portion of S2's coin operated laundry operations either depend on SNI, that the purpose of its operations are to provide laundry services to SNI, or that these business are held out as being related in any way. To the contrary, these are separate businesses with independent purposes.  For these reasons, Plaintiff has failed to sufficiently allege that SNI and S2 are part of a single enterprise.

All told, Plaintiff's Second Amended Complaint and the conclusory allegations therein are insufficient to state an actionable FLSA claim against Defendants. Accordingly, the Motion should be granted and each of these claims dismissed.

## IV.  CONCLUSION

Defendants respectfully request that the Court grant the Motion and dismiss the

Second Amended Complaint in its entirety.

Respectfully submitted,

By:   /s/ Ryan K. McComber
      Timothy A. Daniels
      Texas Bar No. 05375190
      tim.daniels@figdav.com
      Ryan K. McComber
      Texas Bar No. 24041428
      ryan.mccomber@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas  75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

    I certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system and all others will be notified via electronic mail and/or certified mail, return receipt requested on February 6, 2017.

      /s/ Ryan K. McComber
      Ryan K. McComber