IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DIMAS RODRIGUEZ, and all § <br> others similarly situated under § <br> 29 U.S.C. § 216 (b), § <br>     Plaintiff, § <br> § <br> v. § <br> § <br> SHAN NAMKEEN, INC., et al., § <br>     Defendants. § | Civil Action No. 3:15-CV-3370-BK |

## MEMORANDUM OPINION AND ORDER

Pursuant to the parties' consent to proceed before the magistrate judge, Doc. 9 at 5, this case has been transferred to the undersigned for a final ruling, Doc. 10. The Court now considers Defendants' *Emergency Motion to Stay Discovery*, Doc. 35, and *Motion to Dismiss Plaintiff's Second Amended Complaint*, Doc. 41. After carefully reviewing the pleadings, the parties' briefing, and the applicable law, Defendants' *Motion to Dismiss* is **GRANTED IN PART** and its *Motion to Stay Discovery* is **DENIED AS MOOT**.

### I. BACKGROUND AND PROCEDURAL HISTORY

In October 2015, Plaintiff Dimas Rodriguez filed this claim under the Fair Labor Standards Act ("FLSA") alleging that Defendants, Shan Namkeen, Inc. ("SNI") and Shailesh Patel violated provisions related to the payment of overtime and minimum wages. Doc. 1 at 1. In September 2016, Plaintiff sought and obtained leave to file his *First Amended Complaint*, Doc. 24, which added a joint enterprise[1] allegation and two additional defendants, Manisha and Shirish Patel. *See* Doc. 24 at 1, 3-4. In October 2016, Defendants moved to dismiss Plaintiff's

---

[1] Plaintiff alleges that SNI was involved in a joint enterprise with S2 Brothers, LLC ("S2"). Doc. 39 at 6. While information concerning S2's business is scarce, Plaintiff alleges that S2 operates two "laundromats" in Carrolton and Farmers Branch, Texas. Doc. 39 at 6-7.

claims under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. 29. The Court granted Defendants' motion, yet permitted Plaintiff to amend his complaint a second time. Doc. 34. Shortly thereafter, and in response to Plaintiff's discovery requests, Defendants filed an *Emergency Motion to Stay Discovery* until Plaintiff filed his amended complaint and Defendants' forthcoming motion to dismiss was decided. Doc. 35. Since that time, Plaintiff has filed his *Second Amended Complaint*, Doc. 39, which Defendants again move to dismiss under Rule 12(b)(6), Doc. 41. Following Plaintiff's response, Doc. 42, and Defendants' reply, Doc. 43, the motion is now ripe for consideration.[2]

## II. LEGAL STANDARD

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citation omitted). However, the court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (internal quotation marks and citation omitted). In sum, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

---

[2] In his response, Plaintiff objected to the inclusion of three exhibits attached to Defendants' *Motion to Dismiss*. Doc. 42 at 2. Because the Court did not rely on these attachments in rendering its decision, Plaintiff's objections are moot.

III. ANALYSIS

Defendants again argue that Plaintiff's pleadings are factually deficient and fail to establish (1) individual coverage, (2) enterprise coverage, and (3) that SNI is engaged in a joint enterprise with S2. Doc. 41 at 2, 4-11. In response, Plaintiff contends that his pleadings contain sufficient factual support, and alternatively he requests leave to amend his complaint should the Court find his pleadings deficient in whole or in part. Doc. 42 at 4-15.

The sections of the FLSA dealing with minimum wage and overtime pay requirements apply only to (1) an employer with "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" ("individual coverage"), or (2) to an employer with employees "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage").[3] 29 U.S.C. §§ 206(a)(1), 207(a)(1); *see Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (using the terms "individual" and "enterprise" coverage). While "[e]ither individual *or* enterprise coverage is enough to invoke FLSA protection," *Martin*, 955 F.2d at 1032 (emphasis in original), the plaintiff has the burden or establishing the application of either. *Mendoza v. Detail Sols., L.L.C.*, 911 F.Supp.2d 433, 439 (N.D. Tex. 2012) (Fish, J.).

**A. Individual Coverage**

Plaintiff plausibly alleges individual coverage. While the FLSA does not define "individual coverage," the Court of Appeals for the Fifth Circuit instructs courts to determine whether the employee's job "is so directly and vitally related to the functioning of an

---

[3] The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). "In other words, 'commerce' refers to interstate commerce." *Morrow v. JW Elec., Inc.*, No. 11-CV-1988-D, 2011 WL 5599051, at *2 n.2 (N.D. Tex. Nov. 16, 2011) (Fitzwater, J.) (citation omitted).

instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam) (quoting *Mitchell v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960)). If an employer conducts business in several states, then an employee of that business engages in commerce "when their work is an essential and integral part of the employer's interstate business." *Barr v. Custom Design & Installation, Inc.*, No. 13-CV-4925-M, 2015 WL 1255870, at *2 (N.D. Tex. Mar. 19, 2015) (Lynn, J.) (citing *Wirtz v. Wohl Shoe Co.*, 382 F.2d 848, 851 (5th Cir. 1967)). "Employees are engaged 'in the production of goods for commerce' if they are involved with any 'incidental operation preparatory to putting goods into the stream of commerce.'" *Flores v. ACT Event Servs., Inc.*, 55 F.Supp.3d 928, 935 (N.D. Tex. 2014) (Fish, J.) (quoting *W. Union Tel. Co. v. Lenroot*, 323 U.S. 490, 503 (1945)).

Plaintiff's *Second Amended Complaint* expands on the allegation of individual coverage the Court previously found lacking in factual specificity. It includes allegations that (1) the products, ingredients, and tools Plaintiff transported and used to prepare Defendants' goods had previously traveled across state lines; (2) SNI conducted business outside of Texas; and (3) the goods Plaintiff prepared for Defendants were sold outside of Texas.[4] *See* Doc. 39 at 3-5.

However, the fact that Plaintiff may have used tools or worked on products that previously traveled across state lines does not establish individual coverage. *Devore v. Lyons*, No. 16-CV-1083-BN, 2016 WL 6277810, at *9 (N.D. Tex. Oct. 25, 2016) (Horan, J.) (citations omitted); *see also Tran v. Thai*, No. H-08-3650, 2010 WL 5232944, at *4 (S.D. Tex. Dec. 16, 2010) ("[R]eception of items from out of state wholesalers ends the interstate journey and

---

[4] Plaintiff states that the goods were sold to "states surrounding Texas," as well as Illinois and North Carolina. Doc. 39 at 4-5.

4

employees engaged in further intrastate movement of the goods are 'not covered under the [FLSA]'") (citation omitted). That being said, Plaintiff alleges that (1) Defendants conduct business outside of Texas, and (2) the goods Plaintiff manufactured for Defendants during the course of his employment were being distributed to states surrounding Texas, as well as Illinois and North Carolina. Doc. 39 at 4-5. Taken as true, these allegations show that Plaintiff was engaged in commerce, as the preparation of goods for interstate sale would necessarily be an "essential and integral" part of Defendants' interstate business, and not – as Defendants suggest – tangentially related thereto. *Barr*, 2015 WL 1255870, at *2; *see also Walling v. Sondock*, 132 F.2d 77, 78 (5th Cir. 1942) ("[I]f an employee's services are part of and contribute materially to the consummation of transactions in interstate commerce, the employee is engaged in commerce as defined by the [FLSA].").

While Defendants demand that Plaintiff further specify the states to which SNI's products were sent, and the regularity with which the products he worked on were sold out of state, they fail to cite – and the Court is unable to find – any authority suggesting Plaintiff's fact7ual enhancements to his amended complaint are insufficient to overcome a Rule 12(b)(6) challenge. Additionally, Plaintiff's *Second Amended Complaint* specifically mentions that Defendants' products were sent to Illinois and North Carolina; the mere fact that Plaintiff also generally mentions "states surrounding Texas" does not make his allegation of individual coverage implausible or conclusory. Doc. 39 at 5; Doc. 43 at 3-4. On the contrary, Plaintiff's allegations demonstrate that he regularly "work[ed] with goods intended for use, delivery, or sale outside of Texas." *Barr*, 2015 WL 1255870, at *5. As Plaintiff has plausibly alleged individual coverage, Defendants' motion to dismiss is denied with regard to this claim.

## B. Enterprise Coverage

Plaintiff also plausibly alleges enterprise coverage in his *Second Amended Complaint*. In order to establish enterprise coverage, Plaintiff must sufficiently allege that he was "employed in an enterprise engaged in commerce or in the production of goods for commerce." *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1). For the purposes of establishing enterprise coverage, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1). The first prong of the enterprise coverage definition can be met by either meeting the commerce requirement,[5] or the handling requirement. *Mendoza*, 911 F.Supp.2d at 439. To satisfy the second prong, Plaintiff must allege that Defendants' enterprise satisfies the dollar-volume requirement.

Plaintiff's *Second Amended Complaint* includes the following factual enhancements: While working as a laborer and delivery driver he (1) unloaded bulk shipments of bags purchased from India, which were used to package SNI's products; (2) used ingredients that originated outside of Texas to prepare SNI's products; and (3) used machines manufactured outside of Texas to prepare and package SNI's products. Doc. 39 at 3-4. Plaintiff further alleges that a number of other individuals, including his wife, also participated in the production, packaging, and distribution of SNI's products. Doc. 39 at 5-6. As stated above, Plaintiff also

---

[5] The commerce requirement can be analyzed in essentially the same manner as Plaintiff's individual coverage claim. *Mendoza*, 911 F.Supp.2d at 439.

alleges that SNI distributed these products to states surrounding Texas, as well as Illinois and North Carolina. Doc. 39 at 4-5. Lastly, Plaintiff states that SNI "individually and/or collectively as part of the joint enterprise [with S2]" (1) had gross sales or business done in excess of $500,000 annually from 2011 to 2014, and (2) was expected to have gross sales or business done in excess of $500,000 in 2015. Doc. 39 at 5.

On the basis of these factual enhancements, Plaintiff sufficiently alleges enterprise coverage. Plaintiff's once threadbare recitation of the commerce and handling requirements has now been properly clothed, and no longer "leaves the court asking what goods or materials did the employees handle or what instrumentalities of interstate commerce did they use." *Centeno v. Facilities Consulting Grp., Inc.*, No. 14-CV-3696-G, 2015 WL 247735, at *11 (N.D. Tex. Jan. 20, 2015) (Fish, J.). Additionally, for the reasons discussed in the Court's previous Order, Plaintiff's allegations concerning the dollar-volume requirement are permissible at this stage. *See* Doc. 34 at 7 n.4. Accordingly, Defendants' motion is denied with regard to Plaintiff's enterprise coverage theory.

**C. Joint Enterprise**

Lastly, Defendants argue that Plaintiff fails to sufficiently allege that SNI and S2 are a joint enterprise because they neither engage in related activities nor share a common business purpose. Doc. 41 at 7-8. Specifically, Defendants argues that S2's laundromat business is "separate [from] and unrelated" to SNI's food manufacturing business, and cannot be considered complementary to SNI. Doc. 41 at 9. Instead, Defendants argue that SNI and S2 are merely engaged in a mutually beneficial working relationship that furthers "their independent business objectives of earning income for their separate businesses." Doc. 41 at 9.

In response, Plaintiff contends that S2 is only a laundromat "on paper," performs "integral and essential" services for SNI, and is thus "involved in the business of manufacturing

and distributing Indian snack foods." Doc. 42 at 12. Additionally, Plaintiff argues that the fact SNI and S2 perform related activities and are under common control indicates the two share a common business purpose. Doc. 42 at 12-13. Defendants' argument is well-taken.

To state a joint enterprise claim, Plaintiff must allege facts that SNI and S2 (1) engaged in related activities; (2) were a unified operation under common control; and (3) shared a common business purpose.[6] Activities are "related" when they are (1) the same or similar, (2) auxiliary and service activities (e.g. central office and warehousing activities, bookkeeping, auditing, purchasing, and advertising), or (3) part of a vertical structure (e.g. "the manufacturing, warehousing, and retailing of a particular product or products"). 29 C.F.R. § 779.206(a). "A common business purpose exists if 'the separate corporations engaged in complementary businesses, and were to a significant degree operationally interdependent.'" *Reich v. Bay, Inc.*, 23 F.3d 110, 115-116 (5th Cir. 1994) (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 530 (5th Cir. 1982)). This requires alleging "[m]ore than a common goal to make a profit." *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1367 (5th Cir. 1973). Where, however, "the activities are not performed as a part of such enterprise but for an entirely separate and unrelated business, they will be considered performed for a different business purpose and will not be a part of that enterprise." 29 C.F.R. § 779.213.

In an effort to bolster his assertion of a joint enterprise, Plaintiff states that (1) SNI's manufacturing/packaging operation was housed in "an interconnected portion of S2's building, and "sectioned off from" but connected by an interior hallway or exterior route to, the laundromat;[7] and (2) while in this area, SNI employees working in the food manufacturing area

---

[6] Defendants do not appear to contest that SNI and S2 were under common control.
[7] Plaintiff alleges that in 2011, SNI moved its manufacturing activities to a facility in Garland, Texas, but it still uses S2's facilities to package and store its goods. Doc. 39 at 6-7.

8

would monitor video feeds of the laundromat so they could transition to assisting in the laundromat "as necessary." Doc. 39 at 6. Additionally, Plaintiff notes the way both entities benefitted from the arrangement: (1) SNI was able to utilize S2's employees and facilities to store and package its goods, thereby reducing overhead cost; and (2) S2 was able to "make better use of real estate and employee time," and would get assistance from SNI employees when needed. Doc. 39 at 7.

Because of the correlation between the related-activities and common-business-purpose inquiries, they will be discussed jointly. *See Veterans Cleaning*, 482 F.2d at 1365. Plaintiff's *Second Amended Complaint* is scarce on details regarding S2's business activities, save for several references to it as a "laundromat." *See, e.g.*, Doc. 39 at 6. The activities of a laundromat and a food manufacturer are not the same or similar, and Plaintiff does not explain how S2's laundry activities are auxiliary to or aid SNI's food manufacturing activities. 29 C.F.R. § 779.206(a). Even if the occasional intermingling of SNI and S2 employees could be considered an auxiliary or service activity, Plaintiff fails to allege that both entities shared a common business purpose. Specifically, Plaintiff does not explain, and the Court fails to see, how the businesses of a food manufacturer and a laundromat complement one another. *Bay*, 23 F.3d at 115-116. Similarly lacking are allegations that SNI and S2 are operationally interdependent to a significant degree. *Id.* While Plaintiff alleges that SNI gained employees and facilities "necessary for the completion of [its] production and distribution activities," he again makes no similar claims of dependency on the part of S2. Doc. 39 at 7. The closest Plaintiff comes is alleging that the arrangement enabled S2 "to make better use of real estate and employee time that was otherwise wasted" and provided S2 with SNI employees that would assist the laundromat "in the event that additional assistance was necessary." Doc. 39 at 7.

None of these alleged benefits permit the reasonable inference that S2's operations were dependent on SNI, or that S2 accrued substantial benefits from the arrangement comparable to that of SNI. *Cf. Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 692-93 (4th Cir. 1990) ("Entities which provide *mutually supportive services* to the *substantial advantage of each entity* are operationally interdependent and may be treated as a single enterprise under the [FLSA].") (emphasis added) (citing *Veterans Cleaning*, 482 F.2d at 1366-67).[8] The mere fact that SNI and S2 allegedly operated on the same real estate does not change this analysis. *See Dunlop v. Ashy*, 555 F.2d 1228, 1232 (5th Cir. 1977) ("There is a natural tendency to conclude that these businesses are part of a single entity since they are housed in the same building, but physical connexity is not the test.").

All told, Plaintiff does not allege that SNI and S2 engaged in related activities or shared a common business purpose. Thus, to the extent SNI and S2 derived benefits from their arrangement, those benefits accrued only to their independent business objectives of manufacturing snack foods and providing laundromat services, respectively. *See Brennan v. Ashy*, 397 F.Supp. 1347, 1350-51 (W.D. La. 1975) (finding no common business purpose where the benefits resulting from cooperation between two entities accrued "to the separate benefit of

---

[8] *See also Bay*, 23 F.3d at 116 (finding a contracting company and a subcontracting company complemented and depended on each other where the contracting company filled its labor needs with the subcontracting company's employees, and 90 percent of the subcontractor's business came from supplying the contractor with labor); *Flores*, 55 F.Supp.3d at 937 (finding two entities – a production company and a cleaning company – shared a common business purpose, where the cleaning company's "sole purpose" was to provide people to work at the production company's events); *Reich v. Priba Corp.*, 890 F.Supp. 586, 589-90 (N.D. Tex. 1995) (Fish, J.) (finding that two entities shared a common business purpose, where both entities jointly promoted and managed a gentlemen's club, and "neither entity would exist without the presence of the other"); *Howard v. John Moore, L.P.*, No. H-13-1672, 2014 WL 5090626, at *3 (S.D. Tex. Oct. 9, 2014) (finding allegations of related activities and common business purpose sufficient to avoid dismissal where the entities each performed home services, shared similar names, and advertised as a single business unit on the same website).

10

each"). Absent a common business purpose linking SNI and S2, the coordination alleged is "insufficient to fuse the two operations into 'a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose'" *Dunlop*, 555 F.2d at 1232 (quoting 29 C.F.R. § 779.217). Without more, the only business purpose common to both SNI and S2 is the desire of their owner to profit from the operation of each – this is insufficient. *Veterans Cleaning*, 482 F.2d at 1367.

Therefore, Defendants' motion to dismiss is granted as to Plaintiff's joint enterprise theory. Plaintiff may not rely on S2 Brothers, LLC to establish enterprise coverage.

### IV. LEAVE TO AMEND

Plaintiff again requests leave to amend his complaint in the event that all or part of his claims are dismissed. Doc. 42 at 14-15. Ordinarily, a plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam). Here, however, Plaintiff twice has been permitted to amend his complaint, and has done so, yet, his joint enterprise coverage theory claim is still deficient for the reasons stated herein. Accordingly, with regard to his joint enterprise coverage theory, the Court concludes that Plaintiff has pleaded his best case. Allowing Plaintiff a further opportunity to amend this claim would be futile and cause needless delay. *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."). Accordingly, Plaintiff's joint enterprise coverage theory is **DISMISSED WITH PREJUDICE**.

11

## V. CONCLUSION

In light of the foregoing, Defendants' *Motion to Dismiss Plaintiff's Second Amended Complaint*, Doc. 41, is **GRANTED IN PART**, to the extent stated herein. Having rendered a decision on this motion,[9] Defendants' *Emergency Motion to Stay Discovery*, Doc. 35, is **DENIED AS MOOT**.

**SO ORDERED** on May 15, 2017.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[9] Defendants sought a stay of discovery pending the Court's resolution of the instant motion to dismiss. Doc. 35.